# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

RAVICHANDAR ARUKALA, On Behalf of Himself and All Others Similarly Situated,

     Plaintiff,

v.

UQM TECHNOLOGIES, INC.,
DONALD W. VANLANDINGHAM,
JOSEPH R. MITCHELL,
STEPHEN J. ROY,
JOSEPH P. SELLINGER, and
JOHN E. SZTYKIEL,

     Defendants.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Ravichandar Arukala ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public stockholders of UQM Technologies, Inc. ("UQM" or the "Company") against UQM and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder and to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by Danfoss A/S ("Danfoss") through Danfoss' wholly owned

subsidiaries, Danfoss Power Solutions (US) Company ("Parent") and Danfoss-2019 Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On January 21, 2019, UQM issued a press release announcing UQM and Danfoss had entered into an Agreement and Plan of Merger dated January 21, 2019 to sell UQM to Danfoss. Under the terms of the Merger Agreement, each UQM stockholder will receive $1.71 in cash for each share of UQM they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $100 million, including the assumption of UQM's debt.

3.      On February 11, 2019, UQM filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that UQM stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) UQM management's financial projections; (ii) the valuation analyses prepared by UQM's financial advisor Duff & Phelps, LLC ("Duff & Phelps") in connection with the rendering of its fairness opinion; (iii) potential conflicts of interest faced by Duff & Phelps and Company insiders; and (iv) the sales process leading up to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as UQM stockholders need such material information in order to cast a fully-informed vote or make an informed appraisal decision in connection with the Proposed Transaction.

4.      In short, unless remedied, UQM's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act.

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.   UQM is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of UQM common stock.

9.      Defendant UQM is a Colorado corporation with its principal place of business located at 4120 Specialty Place, Longmont, Colorado 80504.  UQM's common stock trades on the New York Stock Exchange under the ticker symbol "UQM."

10.     Defendant Donald W. Vanlandingham ("Vanlandingham") is Chairman of the Board and has been a director of the Company since 2003.

11.     Defendant Joseph R. Mitchell ("Mitchell") has been UQM's President and Chief Executive Officer ("CEO") since January 2016 and a director of the Company since 2012.

Defendant Mitchell previously served as Interim President, CEO, and Chief Operating Officer ("COO") of UQM from July 2015 to January 2016 and as Senior Vice President of Operations of UQM from June 2012 to July 2015.

12.     Defendant Stephen J. Roy ("Roy") has been a director of the Company since 2000.

13.     Defendant Joseph P. Sellinger ("Sellinger") has been a director of the Company since 2008.

14.     Defendant John E. Sztykiel ("Sztykiel") has been a director of the Company since 2012.

15.     The defendants identified in paragraphs 10 through 14 are collectively referred to herein as the "Individual Defendants" or the "Board."

**OTHER RELEVANT ENTITIES**

16.     Danfoss is a Denmark-based company and multi-industry technology provider divided into four business segments: Parent, Danfoss Cooling, Danfoss Drives, and Danfoss Heating.

17.     Parent, a wholly owned subsidiary of Danfoss, provides mobile hydraulics for the construction, agriculture and other off-highway vehicle markets.

18.     Merger Sub is a Delaware corporation and wholly owned subsidiary of Parent.

**CLASS ACTION ALLEGATIONS**

19.     Plaintiff brings this action as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the other public stockholders of UQM (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.     This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable.  As of February 8, 2019, there were approximately 60,838,286, shares of UQM common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the

Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

26.     UQM develops, manufactures and sells power dense, high efficiency electric motors, generators, power electronic controllers and fuel cell compressors for the commercial truck, bus, automotive, marine, and industrial markets.  The Company's focus is to incorporate its technology as propulsion systems for electric, hybrid electric, plug-in hybrid electric and fuel cell electric vehicles.  UQM generates revenue from two principal activities: 1) the sale of motors, generators, electronic controls and fuel cell compressors; and 2) research, development, and application engineering contract services.

27.     UQM's principal products include propulsion motors and generators with power ratings from 50 kilowatts to 250 kilowatts, auxiliary motors and electric controls and DC-to-DC converters.  The Company primarily focuses on the transportation markets, specifically on the commercial truck and bus space, followed by automotive, then marine, and other applications.

28.     In 2018, UQM took many steps to fuel its growth throughout China and the United States.  For example, on July 31, 2018, the Company announced it signed a lease agreement in Shanghai, China to establish a customer service center for its fuel cell compressor systems and propulsion systems.  According to the press release, the facility will allow UQM to provide quick turnaround for service and spare parts to UQM's customers, and eventually assemble the fuel cell compressor systems in that region.  Defendant Mitchell is quoted as stating:

> We are very pleased to see the expansion of our fuel cell compressor business, and the opening of a service center in China is the next step in solidifying our position as a leader in this market. With our proven technology, and now our local presence

established in China, we are continuing to execute on our strategy for global growth.

29.     On August 9, 2018, UQM secured approximately $3.0 million in new fuel cell compressor system purchase orders from new and existing Chinese customers.  Commenting on the Company's growth in the fuel cell vehicle market, defendant Mitchell stated:

> When China expanded their New Energy Vehicles regulations to include fuel cell vehicles, there was a major shift and increase in demand in the fuel cell vehicle market. We continue to expand our customer base and win new business and customers with our proven high performance and cost effective fuel cell compressor system in this growing market, especially in China, but also in Europe and North America. Establishing our fuel cell service center in Shanghai shows our commitment to this market. Our fuel cell compressor product line has become a key element of our global growth strategy, and we continue to invest in improved performance and cost effective solutions to serve this market.

30.     Additionally, on August 30, 2018, the Company received an order from Lightning Systems for UQM's eDT 220 electric propulsion systems for use in several new projects, including Class 6 vehicles for Zeem Solutions in New York and a city bus program for Via Mobility in Boulder, Colorado.  The Company expected shipments to commence in 2018 and continue into 2019.

31.     UQM announced its third quarter 2018 financial results on October 31, 2018, reporting revenue of $4.4 million, a 59% increase compared to revenue of $2.8 million in the third quarter of 2017.

**The Proposed Transaction**

32.     Beginning in 2011, the Company adopted a plan to locate a strategic partner that would support the Company in its efforts to expand internationally, and particularly in the market for electric vehicles and controllers in China.

33.     On June 28, 2016, UQM entered into a Stock Issuance and Purchase Agreement with American Compass, Inc. ("American Compass"), a wholly-owned subsidiary of Hybrid

Kinetic Group Limited ("Hybrid Kinetic"), pursuant to which American Compass would purchase 66.5 million newly issued shares of the Company's common stock for an aggregate purchase price of $47,880,000. As part of the agreement, Hybrid Kinetic sought to amend the Company's articles of incorporation and bylaws and the transaction was ultimately terminated.

34.     On August 25, 2017, the Company entered into a Stock Purchase Agreement with Sinotruk (BVI) Limited ("Sinotruk"). The first stage investment closed on September 25, 2017, resulting in Sinotruk acquiring 5,347,300 shares of the Company's common stock, representing 9.9% of the total outstanding shares at the time, for approximately $5.1 million. In the second stage investment, Sinotruk was to acquire such number of additional shares that would result in Sinotruk owning 34% of the Company's then-outstanding common stock. On May 9, 2018, the Company announced that CFIUS determined not to approve the second stage investment and the parties then terminated the agreement.

35.     In connection with the Company's strategy to discuss possible strategic investments or development and sales joint ventures with interested parties, two potential investors entered into confidentiality agreements with the Company and initiated due diligence.

36.     In August 2018, Danfoss contacted UQM to discuss collaboration opportunities. Representatives of each company met on September 12, 2018 to discuss a potential relationship between UQM and Danfoss.

37.     Over the next several weeks the parties continued to discuss a potential transaction between the two companies and engage in due diligence.

38.     On November 16, 2018, Danfoss sent defendant Mitchell a non-binding letter of intent for Danfoss to acquire between 51% and 100% of the Company's outstanding capital stock

with a request for a period of exclusivity for 15 business days.  On November 21, 2018, the parties

executed the non-binding letter of intent along with the 15 business day exclusivity period.

39.     On December 13, 2018, the Company received from Danfoss a proposal to acquire

100% of the shares of the Company at a price between $1.50-$1.60 per share.   Following

discussions over the next few weeks, the parties tentatively agreed to a price of $1.71 per share.

40.     At a January 18, 2019 Board meeting, Duff & Phelps rendered its fairness opinion

and the Board adopted the Merger Agreement.

41.     On January 21, 2019, UQM and Danfoss executed the Merger Agreement.

42.     Also on January 21, 2019, UQM issued a press release announcing the Proposed

Transaction, which states, in relevant part:

> LONGMONT, Colo.--(BUSINESS WIRE)--UQM Technologies, Inc. (NYSE
> American: UQM) ("UQM" or the "Company"), a developer of alternative energy
> technologies, today announced that it has entered into a definitive merger
> agreement with the Danfoss Power Solutions (US) Company, a wholly-owned
> subsidiary of Denmark-based Danfoss A/S ("Danfoss"), under which Danfoss will
> acquire all outstanding common shares of UQM for $1.71 per share in an all-cash
> transaction valued at approximately $100 million, including the assumption of
> UQM's debt. Danfoss, a privately-owned multinational company with reported
> sales of €5.8 billion in 2017 (2018 full year results to be released on February 28),
> is a leading manufacturer of hydraulic systems, drives, motors, and components for
> the automotive, aerospace, HVAC, and energy industries. The merger anticipates
> that UQM will become part of the Danfoss Power Solutions segment.

> The cash consideration represents a premium of approximately 52.5% over UQM's
> closing share price on January 18, 2019 and a 71.4% premium to its weighted
> average trading price over the trailing 60 days. The transaction will be funded with
> Danfoss' cash on hand and is not subject to any financing condition. The merger
> agreement was unanimously agreed to by the Boards of Directors of both UQM and
> Danfoss; GDG Green Dolphin, LLC – which holds approximately 7.4% of the
> issued and outstanding shares of UQM – and all UQM directors and officers have
> executed Voting and Support Agreements in favor of the acquisition. Closing of
> the transaction is subject to approval by two-thirds of UQM shareholders and by
> the Committee on Foreign Investment in the United States ("CFIUS") as well as
> other customary closing conditions.

Joe Mitchell, UQM Technologies' President and Chief Executive Officer, stated, "We believe UQM will be an excellent addition to Danfoss as our products, business model, strategy and focus are closely aligned. Being part of a larger global enterprise will greatly improve our position to compete with other international players, open doors to new markets, and provide critical resources for UQM to continue developing the highly-engineered electric propulsion products we're known for today. We believe the transaction positions UQM well for the future – particularly in key geographies such as China and India, where Danfoss already operates – and provides an attractive return for our shareholders. We're proud of our many accomplishments and look forward to a future with Danfoss, with which we can enhance service for our customers, invest in technology, and adapt to the ever-changing dynamics of our core markets."

Kim Fausing, President & CEO of Danfoss, added, "It is a great pleasure to announce this transaction with UQM, which will position Danfoss for even stronger performance in the industries we serve. We see fast-growing demand for electric solutions within buses and trucks, off-highway vehicles, and marine markets in response to the more stringent emission regulations being imposed – stimulating interest in the efficiency and productivity gains our solutions bring. With an established North American presence, UQM will complement our global sales and manufacturing footprint nicely, further cementing our strong position in the marine as well as on- and off-highway markets. I look forward to welcoming the UQM team to Danfoss and our business."

**<u>Insiders' Interests in the Proposed Transaction</u>**

43.    UQM insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and UQM's public stockholders

44.    Notably, certain Company insiders have potentially secured employment for themselves with the combined company.  According to the Proxy Statement, "[f]ollowing the closing of the Merger, UQM's existing management will continue as the management of UQM . . . ."  Proxy Statement at 35.  In addition, Section 1.06 of the Merger Agreement sets forth:

The officers of the Company immediately prior to the Effective Time shall be the initial officers of the Surviving Corporation and shall hold office until their respective successors are duly elected or appointed and qualified, or their earlier death, resignation or removal in accordance with the Charter and the Bylaws,

subject to each officer's executive employment agreement then in effect. **The Surviving Corporation shall continue to honor the agreements in effect as of the date of this Agreement.**

*Id.* at A-3 (emphasis added).  Moreover, in the press release announcing the Proposed Transaction, Kim Fausing ("Fausing"), President and CEO of Danfoss, is quoted as stating, "I look forward to welcoming the UQM team to Danfoss and our business."

45.    UQM insiders also stand to reap substantial financial benefits for securing the deal with Danfoss.  For example, upon a change in control of the Company, such as the Proposed Transaction, all Company stock options and unvested restricted stock awards will automatically vest and convert into cash payments, as set forth in the following table:

| Name | Number of Company Shares Subject to Options | Total Consideration for Options | Number of Shares of Unvested Restricted Stock | Total Consideration for Unvested Restricted Stock | Aggregate Consideration for Equity Awards |
|---|---|---|---|---|---|
| Joseph R. Mitchell | 766,872 | $ 560,987 | 69,831 | $ 119,411 | $ 680,398 |
| David I. Rosenthal | 441,147 | $ 318,994 | 33,770 | $ 57,747 | $ 376,741 |
| Adrian P. Schaffer | 391,250 | $ 285,166 | 26,515 | $ 45,341 | $ 330,507 |
| Josh M. Ley | 283,378 | $ 205,517 | 20,308 | $ 34,727 | $ 240,244 |
| Donald W. Vanlandingham | 106,966 | $ 73,379 | — | $ — | $ 73,379 |
| Stephen J. Roy | 140,382 | $ 107,829 | — | $ — | $ 107,829 |
| Joseph P. Sellinger | 118,346 | $ 60,706 | — | $ — | $ 60,706 |
| John E. Sztykiel | 89,162 | $ 60,706 | — | $ — | $ 60,706 |

46.    Moreover, if they are terminated in connection with the Proposed Transaction, UQM's named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Unvested Restricted Shares ($)(2) | Unvested Options ($)(3) | Benefits ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Joseph R. Mitchell | 839,264 | 119,411 | 289,876 | 8,156 | 1,256,708 |
| David I. Rosenthal | 183,305 | 57,747 | 140,823 | 8,058 | 389,933 |
| Adrian P. Schaffer | 166,777 | 45,341 | 104,544 | 5,624 | 322,285 |

**<u>The Proxy Statement Contains Material Misstatements and Omissions</u>**

47.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to UQM's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

48.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) UQM management's financial projections; (ii) the valuation analyses prepared by UQM's financial advisor Duff & Phelps in connection with the rendering of its fairness opinion; (iii) potential conflicts of interest faced by Duff & Phelps and Company insiders; and (iv) the sales process leading up to the Proposed Transaction.  Accordingly, UQM stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

**Material Omissions Concerning UQM Management's Financial Projections**

49.     The Proxy Statement is materially deficient because it fails to disclose material information relating to UQM management's best estimates of the Company's intrinsic value and prospects going forward.

50.     The Proxy Statement fails to disclose any of UQM management's financial projections that were provided to and relied upon by the Company's financial advisor Duff & Phelps in connection with its financial analyses.

51.     For example, the Proxy Statement sets forth that in connection with its fairness opinion, Duff & Phelps reviewed, among other things: "[o]ther internal documents relating to the history, current operations, and probable future outlook of the Company, including financial

projections for the Company, provided to Duff & Phelps by the Company's management (the "Management Projections")[.]" *Id.*at 27.

52.     Additionally, in connection with Duff & Phelps' *Discounted Cash Flow Analysis* ("DCF") of UQM, the Proxy Statement further sets forth:

> Duff & Phelps performed a discounted cash flow analysis of the projected **unlevered free cash flows of the Company for the fiscal years ending December 31, 2019 through December 31, 2028**. . . .
>
> Duff & Phelps calculated the Company's projected unlevered free cash flows by taking its **projected earnings before interest and taxes, subtracting taxes, adding back depreciation, and subtracting capital expenditures and the investment in net working capital**. Duff & Phelps calculated the terminal value in 2028 using a perpetuity growth formula by capitalizing the **normalized fiscal year ending 2028 free cash flow** using a 3.0% terminal growth rate.
>
> **For purposes of its discounted cash flow analysis, Duff & Phelps utilized and relied upon the Management Projections, which provided a financial forecast for the fiscal years ending December 31, 2019 through December 31, 2028**.

*Id.* at 30 (emphasis added).   Yet, the Proxy Statement *wholly omits* the financial projections prepared by the management of the Company relating to the Company for the fiscal years ending December 31, 2019 through December 31, 2028, including unlevered free cash flows ("UFCFs"), earnings before interest and taxes, taxes, depreciation, capital expenditures, investment in net working capital, and normalized free cash flow.

53.     Moreover, the Proxy Statement sets forth that:

> The Company has generated net operating losses that could be used to offset future taxable income. These tax benefits would be significantly limited in a change of control transaction; however, these tax benefits have incremental value to the Company and were included in Duff & Phelps' analysis. Because the Company expects to generate taxable income in the projection period based on the Management Projections, the effective federal net operating loss carryforward use was projected by the Company's management subject to limitation under Internal Revenue Code Section 382. The federal tax savings associated with this tax shield were discounted at the Company's estimated weighted average cost of capital as calculated using the Capital Asset Pricing Model.

*Id*. at 33.   The Proxy Statement, however, fails to disclose UQM's projected net operating loss carryforwards that were calculated by UQM management and relied upon by Duff & Phelps in connection with its analyses.

54.      Without this information, UQM stockholders are unable to evaluate the Merger Consideration, UQM's financial future as a standalone entity, the accuracy of Duff & Phelps' financial analyses, or make an informed decision whether the Proposed Transaction maximizes stockholder value and serves their interests.

55.      The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor, Duff & Phelps" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Duff & Phelps' Financial Analyses***

56.      The Proxy Statement describes Duff & Phelps' fairness opinion and the various valuation analyses it performed in support of its opinion.   However, the description of Duff & Phelps' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.   Without this information, as described below, UQM's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Duff & Phelps' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek to exercise their appraisal rights.   This omitted information, if disclosed, would significantly alter the total mix of information available to UQM's stockholders.

57.      With respect to Duff & Phelps' *DCF*, the Proxy Statement is materially misleading and incomplete because it fails to disclose: (i) UQM's projected UFCFs for the fiscal years ending December 31, 2019 through December 31, 2028; (ii) UQM's normalized fiscal year ending 2028 free cash flow used by Duff & Phelps to calculate the terminal value in 2028; (iii) UQM's basis

for utilizing a terminal growth rate of 3.0%; (iv) quantification of the respective inputs and assumptions underlying the selection of the discount rate ranges used in the High-growth stage analysis of 30.0% to 35.0%, in the Stable-growth stage analysis of 20.0% to 25.0%, and in the Normalized-growth stage analysis of 13.0%; and (v) the separate, final results of the High-growth stage, Stable-growth stage, and Normalized-growth stage analyses.

58.     With respect to Duff & Phelps' *Selected Public Companies Analysis* and *Selected Mergers and Acquisitions Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples Duff & Phelps calculated for each of the companies and transactions included in the analyses.

59.     The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor, Duff & Phelps" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Duff & Phelps' and Company Insiders' Potential Conflicts of Interest***

60.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest.

61.     The Proxy Statement fails to disclose material information concerning the fees received by Duff & Phelps for any past work performed for the Company.

62.     For example, the Proxy Statement sets forth that "[i]n 2016, Duff & Phelps provided a fairness opinion to the Board in connection with the Company's proposed transaction with Hybrid Kinetic (the "Prior Engagement"). For the Prior Engagement, Duff & Phelps received **customary fees**, expense reimbursement, and indemnification." *Id*. at 34 (emphasis added). The Proxy Statement fails, however, to quantify the amount of "customary fees" received by Duff & Phelps in connection with the Prior Engagement.

15

63.     Full disclosure of all potential conflicts concerning investment bankers is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

64.     The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by UQM insiders.

65.     According to the Proxy Statement, "[f]ollowing the closing of the Merger, UQM's existing management will continue as the management of UQM . . . ." Proxy Statement at 35.  In addition, Section 1.06 of the Merger Agreement sets forth:

> The officers of the Company immediately prior to the Effective Time shall be the initial officers of the Surviving Corporation and shall hold office until their respective successors are duly elected or appointed and qualified, or their earlier death, resignation or removal in accordance with the Charter and the Bylaws, subject to each officer's executive employment agreement then in effect. **The Surviving Corporation shall continue to honor the agreements in effect as of the date of this Agreement.**

*Id*. at A-3 (emphasis added).  Moreover, in the January 21, 2019 press release announcing the Proposed Transaction, Danfoss President and CEO Fausing is quoted as stating, "I look forward to welcoming the UQM team to Danfoss and our business."

66.     However, the Proxy Statement fails to disclose whether any UQM executives have secured positions with the combined company as well as the details of all employment-related discussions and negotiations that occurred between Danfoss and UQM executive officers and directors, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of Danfoss' prior proposals or indications of interest mentioned management retention or board membership in the combined company.

67.     Communications regarding post-transaction employment during the negotiation of

the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

68.    The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor, Duff & Phelps," "Interests of the Company's Directors and Executive Officers in the Transaction" and "Background of the Transaction" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

69.    The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

70.    In connection with the sale process, the Proxy Statement states, "two potential investors did enter into confidentiality agreements and initiated due diligence, including technical and financial diligence and several visits to the UQM headquarters."  *Id*. at 21.  The Proxy Statement fails, however, to expressly indicate whether the confidentiality agreements UQM entered into with each of the potential investors are still in effect and/or contain "don't ask, don't waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

71.    The disclosure of the existence and terms of any confidentiality agreements UQM entered into with any other party is crucial to UQM stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

72.    The omission of this information renders the statements in the "Background of the Transaction" section of the Proxy Statement false and/or materially misleading in contravention

of the Exchange Act.

73.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

74.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

75.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

76.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the intrinsic value of the Company, potential conflicts of interest faced by the Company's financial advisor and Company insiders, the background of the sales process, and the financial analyses performed by the Company's financial advisor.  The defendants were at least negligent in filing the Proxy Statement

with these materially false and misleading statements.

77.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

78.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

79.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

<u>**COUNT II**</u>

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

80.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

81.     The Individual Defendants acted as controlling persons of UQM within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of UQM and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

82.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

83.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

84.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

85.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

86.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, UQM's stockholders will be irreparably harmed.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.


Dated: March 5, 2019                     Respectfully submitted,

                                         /s/ *Richard A. Acocelli*
                                         Richard A. Acocelli
                                         **WEISSLAW LLP**
                                         1500 Broadway, 16th Floor
                                         New York, NY 10036
                                         Telephone: (212) 682-3025
                                         Facsimile: (212) 682-3010
                                         Email: racocelli@weisslawllp.com

                                         *Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com